IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CORNERSTONE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRESTRESS SERVICES INDUSTRIES OF TENNESSEE, LLC, <br><br> Defendant. | No. 2:15-cv-02255-JPM-cgc |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Prestress Services Industries of Tennessee, LLC's Motion for Summary Judgment, filed on May 19, 2016. (ECF No. 36.) For the following reasons, the Court GRANTS the Motion.

I. **PROCEDURAL BACKGROUND**

On March 16, 2015, Plaintiff Cornerstone Systems, Inc. ("Cornerstone" or "Plaintiff") filed a Complaint in the Chancery Court of Shelby County, Tennessee. (Compl., ECF No. 1-1.) Defendant Prestress Services Industries of Tennessee, LLC ("Prestress" or "Defendant") was served with the Complaint on March 20, 2015 (see ECF No. 1-2) and filed a notice of removal to the U.S. District Court for the Western District of Tennessee on April 17, 2015 (ECF No. 1). Defendant filed its Answer on April 24, 2015. (ECF No. 7.)

On January 5, 2016, Defendant filed a Motion to Transfer Venue to the Northern District of Mississippi. (ECF No. 16.) Plaintiff responded in opposition on January 19, 2016. (ECF No. 17.) On June 7, 2016, Judge Samuel H. Mays, Jr. ordered Defendant to submit evidence of the parties' citizenship for jurisdictional purposes. (ECF No. 37.) Defendant filed a response in compliance with the order on June 9, 2016. (ECF No. 38.) On June 15, 2016, this Court received the case on transfer. (ECF No. 39.) The Court denied the Motion to Transfer Venue to the Northern District of Mississippi on July 7, 2016. (ECF No. 44.)

On May 19, 2016, Defendant filed the instant motion for summary judgment. (ECF No. 36.) Plaintiff responded in opposition on June 20, 2016. (ECF No. 41.) Defendant filed a reply brief on July 5, 2016. (ECF No. 42.) On July 26, 2016, the Court held a telephonic hearing on the instant motion. (Min. Entry, ECF No. 46.)

## II. UNDISPUTED MATERIAL FACTS

The following facts are undisputed for purposes of the instant motion.

### A. The Parties and the Agreement

Prestress is a fabricator of bridge products and structural precast, prestressed components. (Abnee Decl. ¶ 1, ECF No. 16-7; Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 36-5;

2

Resp. to SUF ¶ 1, ECF No. 41-8.) Cornerstone is a broker for trucking services and served as the broker for the services of Specialty Logistics. (Abnee Decl. ¶¶ 4-5; SUF ¶¶ 5, 7; Resp. to SUF ¶¶ 5, 7.)

The parties entered into an Agreement for Hauling Product to Ole Miss Parking Garage in Oxford, Mississippi, from Memphis, Tennessee (the "Agreement") on or about April 23, 2014. (See Ex. A to Compl., ECF No. 1-1 at PageID 10; SUF ¶ 2; Resp. to SUF ¶ 2.) The Agreement provides in relevant part that:

> The consideration for the services provided by [Cornerstone] to Prestress shall be as follows: Prestress shall pay [Cornerstone] $550.00 per load delivered to the project site[1] with the above listed equipment operated for Prestress. Prestress shall also pay $0.00 per hour for delays that occur for duration longer than 2 hours past given load/delivery time. Prestress shall also pay $0.00 for canceled deliveries not canceled prior to drivers departing to Prestress Services Industries, L.L.C. Decatur facilities.[2] Such consideration is the total consideration payable to [Cornerstone] pursuant to this Agreement, and [Cornerstone] is solely responsible for the compensation and insurance, (including Workman's Compensation), of the properly certified licensed drivers who will operate the subject vehicle during the term of this Agreement.

(Ex. A to Compl.; SUF ¶ 3; Resp. to SUF ¶ 3.)

Prestress was to begin delivering precast material to the project site in April 2014, but because of delays not attributable to Prestress, it was not permitted to commence

---

[1] The project site refers to the site of the Ole Miss Parking Garage project in Oxford, Mississippi. (See SUF ¶ 2; Resp. to SUF ¶ 2.)
[2] During the telephonic motion hearing, the parties agreed that the facilities referenced in the Agreement are located in Memphis, Tennessee, and are not the named facilities in Decatur, Indiana.

3

delivering material at that time. (Abnee Decl. ¶ 7; SUF ¶¶ 10-11; Resp. to SUF ¶¶ 10-11.)

**B. The Disputed Charges**

Certain invoices[3] contain Truck Order Not Used ("TONU") charges for cancellations that occurred on June 2, 2014, after drivers had departed to Prestress. (Statement of Additional Undisputed Facts ("SAF") ¶ 27, ECF No. 41-8 at PageID 11; Resp. to SAF ¶ 27, ECF No. 43; see ECF No. 36-3 at PageID 383-90.) Prestress has not paid Cornerstone for TONU, empty return, and jobsite shuttle charges, which Cornerstone alleges are owed under the Agreement.[4] (Rodell Dep. 30:20-31:5, ECF No. 41-6; SAF ¶ 33; Resp. to SAF ¶ 33.)

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 757 F.3d 540, 543-44 (6th Cir.

---

[3] The invoice numbers are 1276590, 1276591, 1276592, 1276593, 1276594, 1281490, 1281491, and 1281492. (SAF ¶ 27; Resp. to SAF ¶ 27.)

[4] Cornerstone alleges that the outstanding balance due is $137,060.00. (Compl. ¶ 12, ECF No. 1-1.)

4

2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).

> To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the

5

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)), cert. denied, 133 S. Ct. 866 (2013).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (acknowledging that a district court has no duty to search entire record to establish grounds for summary judgment).

## IV. ANALYSIS

Defendant asserts that it "is entitled to summary judgment because there are no genuine issues of material fact for trial." (ECF No. 36-1 at 6.) Defendant asserts that Plaintiff cannot prove two of the three elements of a breach of contract claim. (Id.) Plaintiff argues that there is evidence in the record that supports its claim that there was a breach of contract and that such evidence creates a genuine issue of material fact for trial. (ECF No. 41 at 5-6.) The Court finds that summary judgment is appropriate and GRANTS Defendant's motion.

### A. Truck Order Not Used ("TONU") Charges

The disputed TONU charges refer to charges for orders that are placed and later canceled. (ECF No. 36-1 at 7 (citing

Rodell Dep. 11:20-25, 12:1-2, ECF No. 36-2); see also SAF ¶ 27; Resp. to SAF ¶ 27.) Defendant asserts that such charges for canceled deliveries are not "recoverable under the express terms of the Agreement." (ECF No. 36-1 at 7.) Plaintiff asserts that the TONU charges are not "canceled deliveries" governed by the terms of the Agreement and that "[a]n issue of fact remains as to whether the TONU invoices . . . represent charges for cancellations that occurred after drivers had departed to the Prestress facility." (ECF No. 41 at 8-9.) The Court finds that there is no dispute of material fact that the TONU charges are not owed under the Agreement.

An employee for Plaintiff testified that "there was never anything canceled prior to [departure]. . . . [A]ll the cancellations came the same day once drivers were en route, once drivers, had their loads, all their pick-up numbers, and everything they needed for that day's worth of work." (Whitten Dep. 20:6-11, ECF No. 41-3.) Since the deliveries were all canceled after the "drivers['] depart[ure] to Prestress," Prestress is not liable for payment on such deliveries.[5]

---

[5] Plaintiff's own Credit and Collections Manager stated in an internal e-mail that "[t]he TONU charges are not valid charges to Prestress in my opinion" because a "TONU [charge] is really just a non-contractual penalty charge." (Ex. 18 to Rodell Dep. at PageID 374, ECF No. 36-2 (emphasis added).) In another internal e-mail, the manager clarified that Plaintiff was billing Defendant "for TONU even if the driver hasn't departed" although the contract appeared to state that Defendant will "only pay TONU if the[] driver has already departed." (Ex. 13 to Rodell Dep. at PageID 368, ECF No. 36-2.) The manager's own legal opinions regarding the Agreement are not sufficient to establish that the TONU charges are or are not warranted. See

7

"If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties." Thomas & Betts Corp. v. Hosea Project Movers, LLC, No. 02-2953 Ma/M, 2007 WL 6892328, at *7 (W.D. Tenn. Nov. 2, 2007) (quoting Honeycutt v. Honeycutt, 152 S.W.3d 556,561-62 (Tenn. Ct. App. 2003)). "Contractual language is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." Id. (quoting Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006)). "Demonstration of ambiguity in some respect not material to any existing dispute serves no useful purpose." Donoghue v. IBC USA (Publ'ns), Inc., 70 F.3d 206, 215 (1st Cir. 1995) (emphasis added).

Although the term "departing to Prestress" in the Agreement could refer to any of three scenarios--(1) the drivers' departure from another location to the Prestress facility; (2) the drivers' departure from the Prestress facility to the jobsite; or (3) the drivers' departure from the jobsite back to the Prestress facility--the Court finds that any interpretation contemplates the same result and thus, any ambiguity is immaterial to the analysis of the TONU charges. The contract

---

Great W. Sugar Co. v. White Stokes Co., 736 F.2d 428, 432 (7th Cir. 1984) (discounting "legal conclusions or opinions of . . . laymen as to the legal significance of the language" of a "contract" letter). The manager's opinions, however, that the TONU charges are not recoverable support the Court's ultimate finding that Defendant is entitled to summary judgment.

language relevant to the TONU charges by its plain meaning offers two times at which a canceled delivery could be canceled: either "prior to" the drivers' departure or at another time, not "prior to" the drivers' departure.[6] Regardless of which of the three scenarios above was intended by the parties, Prestress is not obligated to pay the TONU charges because charges for deliveries canceled prior to the drivers' departure are not covered by the Agreement, and charges for canceled deliveries not canceled prior to the drivers' departure--that is, those canceled <u>after</u> the drivers' departure--are $0.00 under the Agreement.[7] (<u>See</u> Ex. A to Compl., ECF No. 1-1 at PageID 10 ("Prestress shall also pay $0.00 for canceled deliveries <u>not canceled</u> prior to drivers departing to Prestress . . . ."

---

[6] Although a canceled delivery technically could also be canceled at the exact time of the drivers' departure, a simultaneous cancellation is not relevant to the analysis, and the Court need not consider it.

[7] If the Agreement's term "departure to Prestress" refers to the earliest possible scenario--the drivers' departure from another location to the Prestress facility--then any TONU charge at issue originated from a cancellation after such departure. (<u>See</u> ECF No. 41 at 9 ("Cornerstone billed TONU charges to Prestress where cancellations occurred <u>after</u> (i) the drivers' departure to the Prestress facility, (ii) while the driver was en route from Memphis to Oxford, or (iii) after the driver had already arrived at the Project site in Oxford.").)

If the Agreement's term "departure to Prestress" refers to the drivers' departure from the Prestress facility to the jobsite, then any TONU charge at issue originating from a cancellation after such departure is governed by the Agreement. The Agreement is silent as to any TONU charge at issue originating from a cancellation before such departure; neither party asserts that Defendant was charged for cancellations before departure.

If the Agreement's term "departure to Prestress" refers to the latest possible scenario--the drivers' departure from the jobsite back to the Prestress facility--then any TONU charge at issue originating from a cancellation after such departure is governed by the Agreement. The Agreement is silent as to any TONU charge at issue originating from a cancellation before such departure; neither party asserts that Defendant was charged for cancellations before departure. The Court notes that this scenario is illogical because if the driver had already arrived at the jobsite, it would not be necessary to cancel a delivery at that point.

(emphasis added)).) Moreover, during the telephonic motion hearing, Plaintiff's counsel conceded that all TONU charges were incurred after drivers "departed to" Prestress. Consequently, there is no dispute of material fact as to whether Defendant breached the Agreement by not paying TONU charges; Defendant was not responsible for TONU charges under the Agreement because the deliveries were canceled after departure to Prestress. Thus, the Court finds that Defendant is entitled to summary judgment with respect to the TONU charges. See United States ex rel. Compton v. Midwest Specialties, Inc., 142 F.3d 296, 301 (6th Cir. 1998) (indicating that summary judgment is appropriate when a district court finds a contract unambiguous).

### B. Empty Return Charges

The disputed empty return charges refer to charges "when a trucker has to bobtail to pick up an empty piece of equipment." (Rodell Dep. 11:15-19, ECF No. 36-2; see also SAF ¶ 32; Resp. to SAF ¶ 32.) To "bobtail" means to "haul without a trailer." (Rodell Dep. 11:18-19, ECF No. 36-2.) Defendant asserts that because Plaintiff and Specialty Logistics decided to drop off loaded trailers due to project-related delays and to return another time to retrieve empty trailers, Defendant is not responsible for covering the cost of Plaintiff's empty returns. (ECF No. 36-1 at 8.) Plaintiff asserts that the parties agreed to both the delivery and return of trailers, although the

Agreement does not literally provide for the return of trailers, and that the empty return charges were authorized by an employee of Defendant's. (ECF No. 41 at 7-8, 10.) The Court finds that there is no genuine dispute of material fact that the empty return charges are not owed under the Agreement.

The Agreement provides that "Prestress shall pay [Cornerstone] $550.00 per load delivered to the project site." (Ex. A to Compl., ECF No. 1-1 at PageID 10.) The Agreement is silent as to the return of empty trailers from the jobsite back to Memphis; this alone is not indicative of ambiguity. See United States v. Tennessee, 632 F. Supp. 2d 795, 801 (W.D. Tenn. 2009) ("ambiguity does not arise simply because a contract does not define a term or because the contract is silent on a particular issue"). Because the contract is silent, the Court must determine the parties' intent. Parrott Marine Sys., Inc. v. Shoremaster, Inc., No. E2007-02789-COA-R3-CV, 2008 WL 3875432, at *3 (Tenn. Ct. App. Aug. 21, 2008) (citing Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885 (Tenn. 2002)).

The parties dispute whether Defendant must pay for all roundtrips made by Plaintiff, including trips specifically made to the jobsite to bring back empty trailers, at the $550.00 rate. Plaintiff argues that there is ambiguity as to the meanings of the term "load" or "above listed equipment" such

11

that the Agreement could mean that any trip to the jobsite by Plaintiff would be charged at the $550.00 rate. (ECF No. 41 at 7.) The Court disagrees with Plaintiff's interpretation because the plain meaning of the term "per load delivered" is that Defendants only incur the cost of trips made with the purpose of transporting materials from the Memphis facility to be deposited at the jobsite.[8] The Court finds that there is no ambiguity in the payment provision and that the intended meaning is for Defendant to pay Plaintiff $550.00 for each delivery of precast product to the jobsite. The Court finds that trips made exclusively to retrieve empty trailers are not contemplated by the Agreement.[9] Consequently, there is no genuine dispute of material fact as to whether Defendant breached the Agreement by not paying the empty return charges; Defendant was not responsible for empty return charges under the Agreement because

---

[8] The parties' filings and their statements during the telephonic motion hearing indicate that they agree that the Agreement covers both delivery and return of trailers and that Plaintiff was responsible for bringing the empty trailers back to Memphis after a delivery to the jobsite. (See, e.g., Resp. to SUF ¶¶ 6, 8; Ballard Dep. 39:15-19, ECF No. 42-1.) Despite their agreement on these facts, the "parol evidence rule does not permit contracting parties to 'use extraneous evidence to alter, vary, or qualify the plain meaning of [the] unambiguous written contract.'" Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 525 (Tenn. 2005) (quoting GRW Enters., Inc. v. Davis, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)). Thus, the Court does not consider the parties' extraneous assertions.

[9] The Court agrees with Plaintiff that the empty return charges (and TONU charges) are not charges governed by the "delays" provision of the Agreement, which states that "Prestress shall also pay $0.00 per hour for delays that occur for duration longer than 2 hours past given load/delivery time." (Ex. A to Compl.; see also ECF No. 41 at 10-11.) The charges are not directly associated with the delays during loading or delivery of the product to which the Agreement refers. Nonetheless, the Agreement's other provisions also do not govern the empty return charges, and the Agreement's cancellation provision governs the TONU charges, see supra Part IV.A.

12

the Agreement only requires payment for trips associated with a delivery. Accordingly, the Court finds that Defendant is entitled to summary judgment with respect to the empty return charges.

**C. Jobsite Shuttle Charges**

The jobsite shuttle charges refer to charges for "daycab/jobsite services" provided by Plaintiff at the jobsite, including the moving of empty trailers from one area to another. (ECF No. 36-1 at 8 (citing Resp. to Interrog. ¶ 6, ECF No. 36-9; Ex. 14 to Rodell Dep. at PageID 371, ECF No. 36-2).) Defendant asserts that the jobsite shuttle charges are "solely related to a decision between Cornerstone and Specialty regarding how they chose to deal with delays." (ECF No. 36-1 at 9.) Plaintiff asserts that Defendant requested and agreed to pay for the jobsite shuttle. (ECF No. 41 at 11-12.) The Court finds that there is no dispute of material fact that the jobsite shuttle charges are not owed under the Agreement.

Based on testimony from employees of the company Plaintiff contracted with to provide trucking services, the parties had agreed that Defendant would pay Plaintiff for the shuttles. (Willer Dep. 41:4-14, 42:1-17, ECF No. 41-5; Campbell Dep. 33:21-23, ECF No. 41-7.) The Agreement, however, is silent as to payment for jobsite shuttle charges. Plaintiff does not appear to dispute that such charges are not covered by the

13

Agreement.  (See ECF No. 41 at 11-12 (making no reference to the Agreement when discussing the charges).)  Further, Plaintiff conceded during the telephonic motion hearing that the Agreement does not address jobsite shuttle charges.  The instant suit alleges only breach of the Agreement (see Compl. ¶¶ 9-13), and Plaintiff has indicated to the Court that it will not move to amend its complaint.  Thus, the Court need not determine whether any other agreement was breached such that Defendant would be responsible for the jobsite shuttle charges.  In the instant case, there is no dispute of material fact as to whether Defendant breached the Agreement by not paying the jobsite shuttle charges; Defendant was not responsible for the jobsite shuttle charges under the Agreement because any agreement between the parties as to the jobsite shuttles is beyond the scope of the Agreement.  Cf. Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc., 102 S.W.3d 621, 630 (Tenn. Ct. App. 2002) (finding no "meeting of the minds so as to constitute a contract" when the parties agreed to certain terms but the plaintiff did not contract for other services provided by the defendant).  Accordingly, the Court finds that Defendant is entitled to summary judgment with respect to the jobsite shuttle charges.

**V. CONCLUSION**

For the foregoing reasons, the Court finds that there is no genuine dispute of material fact as to whether Defendant is obligated to pay the TONU, empty return, or jobsite shuttle charges. The Agreement does not require Defendant to pay any of the three charges, and Plaintiff's breach of contract claim necessarily fails. Thus, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**, this 2nd day of September, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE